Yes. Good morning, your honors. May it please the court. Lara Rushka on behalf of N.E., the student, and his parents. I have with me today Ms. Cassidy, my co-counsel, and the mother of N.E. is with us as well. I'd like to preserve four minutes for rebuttal. So in front of the court today is a novel issue of special education law, and an opportunity to clarify an ambiguous point that's as yet unsettled in the Ninth Circuit. And that question is, what is the current educational placement for a student who's invoked stay put, pursuant to a due process hearing request, after the implementation of an agreed to temporary program, but before the implementation of the program in dispute? And what happens when both of those programs are contained within one IEP? And this was a legal question identified at the earliest stages by the parents and the district, and most recently by Judge Robard, who characterized this as a partially implemented multistage IEP, and acknowledged the absence of Ninth Circuit guidance directly on point. So we'd ask for clarity today on this novel issue of law, both for this family and this district, and future families and districts who find themselves in dispute and seek to have this ambiguity clarified beforehand. So I'll begin with standard of review, which is in some dispute. While typically, a denial of a preliminary injunction would be reviewed for abuse of discretion, whereas here, where the decision by the court was based on an erroneous interpretation of the law, the standard of review would be de novo. And while Judge Robard correctly looked to the Winters factors, and correctly zeroed in on the merits and the likelihood of success on appeal, he necessarily relied on an interpretation of the statutory language under IDEA and stay put jurisprudence. And in doing so, made an error of law in his analysis. And so the standard of review today will be de novo as these questions as to the definition of current educational placement and how to interpret that in this partially implemented multistage IEP, as characterized by Judge Robard. And we put forward that the never implemented, never agreed to program, which we're calling the self-contained program, that was proposed initially by the Bellevue School District for the 2015-16 school year, and then again proposed by Seattle, never implemented, never agreed to, can't possibly be stay put. And we would ask the court to... Counsel, had the family remained in Bellevue under the May 2015 IEP, the child would have been placed in the self-contained program for the new school year. Because that was the IEP that was in effect. And I have a difficult time understanding how moving to Seattle changes that result. In other words, what was then current between school years, I mean, in a sense, one could say, well, there's no such thing as then current. But the most natural understanding of that, where there is an IEP in place, is that you're ready to move on to the next phase of it. So why isn't that the most appropriate interpretation of the statutory text? Because the phase or the stage, as Judge Robard is characterizing it, is in fact a discrete and separate placement. And so when we're looking at current educational placement... And you're making that argument, but you have no authority for that? Or you do have authority? Oh, there's no authority directly on point on this kind of phase. I've referred to it as a mutant IEP. Putting two things... Essentially what they did was to put two placements in one IEP. Precisely. Which is kind of a paperwork thing. But, in fact, there were two different placements, on-the-ground placements. Right. But my understanding is that you're not disagreeing with Judge Graber to the degree that you're not relying on any... You're not saying it would have been any different had they stayed in Bellevue. Except that they would have filed due process earlier. Well, I understand that. But there's no time... I mean, in fact, there doesn't seem to be a relevant time limit in terms of when the documents should have been filed. So if they had filed it... I mean, when the due process proceeding should have been instigated. Why did they wait? I'm not sure I understand why they waited to file a due process hearing. Unless just to say, well, they knew they were going to go to Seattle. They were going to take a gamble that hopefully then they would file at that time and maybe get a better result. I'm not sure. So I want to find out. So there's a few reasons. One, knowing they were moving, and the whole IEP team, everyone knew they were moving. So this was proposed. The summer's coming up. And when you file due process against a district, residency is a part of the jurisdiction. So they wouldn't have actually... It wouldn't have been able to go forward a due process against Bellevue, and it wouldn't have made any sense, a due process against Bellevue. And it couldn't have gotten resolved within the, I think it was one month. But the same exact issue would have arisen, I presume, because whenever they filed it, they weren't challenging the three-week interim placement, and they wouldn't have challenged it. So they would have filed, even if they had filed it right away, they still only would have challenged the self-contained classroom part of it. Correct. That would have been the characterization. I'm sorry, what? Correct. And the question still would have arisen as to, that one would not have been implemented at that point because it wasn't proposed until the following fall. And the question becomes, what's the stay put, whether it becomes the... And it seems the cases all talk about an implemented IEP, not an IEP. So I don't see what the relevance of the move is. I think it adds an element of complexity, and there was an intervening independent educational evaluation, which goes to the question of why they didn't file sooner. But I agree it would have been the same issue once the temporary, the individual program had already been implemented and agreed to. And it was implemented and agreed to before they even got the piece of paper. The piece of paper that put the two placements in the same document. And attempted in the prior written notice, which was issued at least a third of the way into that program, attempting to link them inextricably. And that's part of the district's argument, is that the short-term three-week interim program somehow, as a transition, meant that the parents had implicitly accepted the self-contained program for the following school year. They had written disagree. It's been disputed all the way at every opportunity by the parents towards both districts. And the prior written notice of the district attempts to argue that the prior written notice somehow links it as a transition, and that there are not two discrete placements contained within the same IEP. Is there any case dealing with the sequential problem? We have some cases. There are cases dealing with different pieces of a contemporaneous placement. You did X, but you didn't do Y. But are there any cases dealing with putting two, essentially two placements into a single document and calling it a single implemented IEP? To my knowledge, having not seen the IEPs at issue in the cases, it's hard to tell if they're placed together. We have some that are under settlement agreements, where students in one placement that was agreed to or unilaterally placed by parents, and they're moving back to the district. So those are sequential. But I don't know if they were captured in the same IEP. Counsel? I'm sorry, Judge Mejia. Just real quick. You talked about written notice, but even after parents got the written notice, and I understand the timing of it, but even after they got it, they didn't bring a due process hearing request right away. They waited until the fall when they were in Seattle. When they did receive the prior written notice, having already been in the program, and the program was already implemented and agreed to, their understanding was that that temporary program was an interim placement, was a short-term program detached and disjuncted. They were aware of the second phase, though. And they intended to challenge it before their student ever attended. So it was never agreed to, never implemented. But why did they wait? Because they knew they were moving. They would not have had... I guess they would not have had... Oh, the court would not have had jurisdiction over a due process against Bellevue. It wouldn't have made sense to file due process against Bellevue and then move to Seattle because they wouldn't have residency to be challenging a Bellevue IEP. Seattle needs to adopt a new IEP when they begin at the school year there. So they knew there would be a new IEP. They wrote their letter to Seattle in August explaining the circumstances, presenting the new independent evaluation. And then when the same placement was offered, they promptly filed. Castle, I want to cut to the chase here because the question under the statute is, what was the then current educational placement? And in your opinion, what is the then current educational placement and why? We believe that it's the general education program, his long-term prior program, Jenna, with the para. The one-to-one while we... Except Castle, I guess my problem with that is that that seems to really fly in the face of the whole purpose of the act. This child was in the general placement and that placement was unsuccessful. The child was violent and uncontrollable and a number of things were done to try to mitigate that. And that placement had been not in place for quite some time, I think since 2014. I don't have all the dates in front of me. But it seems to me that that was a historic placement and it's a default placement, but I don't see why that's the then current placement. No, Your Honor. The general education placement with the para was his placement in effect until May 28th, I believe. Except for the three weeks it was in place. Except for the three weeks. So he was in Gen Ed with the para. That was his placement up to the point that the parents agreed to and implemented the three-week temporary individual program, which in the alternative could absolutely be the then current placement in operation under the Johnson v. Johnson and our different definitions. There are other alternatives under the statute, as I understand it, to deal with children who are literally violent, right? And the student was not violent. Well, I know, but there were. I mean, if it was really an out-of-control situation, there are statutory provisions. Certainly. Were those added after Honig v. Joe? I couldn't tell that. I believe so, yes. There's emergency expulsion. So you don't have to go to school. There are ways to deal with it. Absolutely. Or there are temporary programs that can be put in place. There are interim alternative educational settings that can be agreed to. One option to the defendant district would have been to continue the individual program, to extend it and to contain it until the student was ready to transition back into the general education with the para. And we would argue that the general education program was actually tremendously successful for many years. It was this third-grade year. There was a terrible relationship with the administration. There were a lot of changes that went to place. The behavior plan wasn't properly implemented. And so the student actually can be successful in that placement, but there were extra factors that were undermining his success. And that is, in fact, his appropriate program today. But with regard to the current educational placement, the operational placement, in effect, if it's the individual program, that works as well. We would simply argue that it can't possibly be the never-agreed-to, never-implemented program, the self-contained program, which was proposed but never implemented and in dispute, and is in dispute now, for this school year. If you want to save time... I would. Thank you, Your Honor. May it please the Court, I'm Dave Hokett here on behalf of Seattle School District. The issue before the Court is whether the District Court abused its discretion in denying the preliminary injunction. It is a legal question. It's not a legal question. It is a legal question. And in addressing and analyzing that legal question, you look to whether the Court applied an incorrect legal standard. There are two in play here. One would be the standard for the issuance of an injunction. I don't think anybody's arguing that the wrong standard was applied for that. The second standard that was applied was the stay-put one. Also a question of law. And the question then becomes, was the wrong standard applied by Judge Robart when he applied Ninth Circuit authority for what constitutes the then-current educational placement, or did he erroneously... The Ninth Circuit authority, I don't really know why you're belaboring the question of the standard of review or what Judge Robart decided. I mean, there's a legal question here, which is, what is the current educational placement for the purpose of the stay-put under the circumstances here? And I don't understand why Judge Robart's... There's no factual question, so aren't we just in the same position as Judge Robart's in looking at that question? Well, Judge Robart said, I believe that this Court is, Judge Robart said in his ruling, this motion turns on whether the May 2015 IEPs separate classes, which is the self-contained portion, are the placement described in the student's last implemented IEP. Well, that's not what our case law says, is it? It says implemented IEP. Last implemented IEP. Right. Correct. So if the question is whether it's described in the IEP, yeah, it is. But the question was, was it implemented? The case law in the Ninth Circuit doesn't say that each portion of an IEP has to be implemented. But there is no case that deals with anything sequential. I mean, one thing that I noticed when I was looking at Ms. Landwehr's declaration for the Seattle School District is that she understood what was happening here. I mean, she said that the proposal was the cascade program of self-contained therapeutic highly structured program. The parents disagreed. So they wanted, and then they had to deal with the immediate emergency because he'd been expelled. So the parents came in and they said, we want a private placement. And BSD said no, but we agreed to a temporary placement program to finish out the remaining few weeks. And then she says, while in this interim setting he was taught regular and general. So that's what happened. They had a short-term crisis and the major placement was the cascade program and it was never implemented. And I just don't understand why the fact that they stuck this into the same piece of paper makes a width of difference. Because I think it makes a difference for this reason, Your Honor. The standard in the Ninth Circuit says it's the placement described in the student's last implemented IEP. I do agree that this particular IEP had two placements in it. But it doesn't, that guidance from the Ninth Circuit does not say it's the last implemented portion of the IEP. It's the last implemented IEP. Which has two completely different and time differentiated placements in the same piece of paper. Do you have a case like that? They're completely different, right? And they were covering different time periods and they happen to be stuck in a single IEP. But they could have been in two IEPs. It just happened to be in one. No, I don't have a case to cite to you that has that exact fact pattern. And why should it matter whether they had one piece of paper called interim IEP and another one called next fall's IEP or they put it in one place? First of all, I think a distinction needs to be made here that it wasn't indicated in the IEP or in the prior written notice that it was an interim portion. But it was interim because it was for three weeks. But what the IEP team determined and what the IEP team said as the reason for it was it was a transition towards the first stage was a transition towards the second stage. In what sense was it a transition? It was completely different. One was a one-on-one thing. Another one was he was going to go to a class with a bunch of other kids which was a prescribed program. It was a transition in the sense you had to cover this time period but not because they were connected in any particular way. To simply cover the time period, the issue that was coming up between the parents and the school at that point, the school administration was they didn't want the student to return to that particular building. That could have easily been handled by simply having the student change buildings which they did. It was unnecessary to also change the program so that you had a different program in that second building. That's what the IEP said was the transitional part towards a more restrictive placement. And they used the word interim only as to the setting not as to the program. That's what the prior written notice says. I'm curious to your responses. If the parents had requested a due process hearing in Bellevue and had gotten a stay put order that preserved the December 2014 IEP, could they have enforced that in Seattle? I think they could have, Your Honor. I think the answer is clearly yes. What is the difference? The reason... Let me try to finish answering that question. The reason that they... There was no due process hearing request in May while they were in Bellevue. Correct. So that's what I'm trying to figure out. What would have happened if they had filed the due process hearing? Would the 2014 plan be considered the implemented plan if they had filed the due process hearing in May? And could they have asserted that in Seattle? I think the answer to the first question is probably yes. I think the answer to the second question is yes. The first question is, would the December 2014 IEP have become stay put? The process that's anticipated by 20 U.S.C. 1415J is that they file upon disagreement with a new IEP. At that point, I think, had they done that immediately at the point that they received the IEP from Bellevue, most likely the stay put placement would have been the previous placement. Can you explain that to me, please? If I could just follow up real quick while I'm on this, because there's a little issue here that concerns me, and that's how quickly the school district, I mean, might have good reasons as to why they implemented the plan right away after the meeting, but I'm just curious because the parents hadn't gotten the notice, and this is in May of 2015, and they needed time, I think, to go talk to their lawyer. Once they did that, they decided for whatever reason not to challenge and do the due process hearing or the reasons they've stated, but if they had, I just wanted to see if the school district would consider the implemented plan, the one that they started overnight, or if it would have been the 2015, because I want to make sure that the school district's not saying, oh, no, this one's implemented, so they're stuck. No, the school district is not saying that, and I think that the letter from Winston, the OSEP letter from Winston that's been cited to the court, addresses that, and I think it's going to be a fact-dependent determination as to the timing of when they file versus when they are put on notice and so on, and so that's why I said to your earlier question, it's probably yes, depending on how quickly they did it and that sort of thing. Let me ask you something. They weren't challenging, and they wouldn't have challenged this three-week placement, so if they had simply filed it right away but only challenged the self-contained classroom because that's all they wanted to challenge, you would say that then they can't do that, they have to challenge this three-week insurance thing even though they don't care about it? No, I'm not saying that. I'm saying that once they know, which, and I think it's important to understand in the record, what happened at the ALJ initial stage of this case is these arguments began being made during the initial stay-put argument to the ALJ. The ALJ said, I'm going to need to take testimony, and so he did, and he took testimony from four individuals at his request. He took testimony from the person who drafted both the initial draft IEP and the finalized one and the prior written notice, that was the same person, and an administrator from the building and both parents, and at that point, he determined that everybody knew exactly, as of the IEP meeting on May 26th, exactly what the program was going to be and that it was going to contain both provisions. At that point, once they're on notice of that and they know that the IEP contains both, then they are under an obligation, if they want to invoke stay-put, they're under an obligation to file. That's no different from any other parent who is presented with an IEP that they object to. If they want to avoid that IEP becoming stay-put, they're required to file, and in this instance, the logic that's being presented by the parents' case, let's flip it. Let's say that the two stages of the IEP, the time frames are opposite, and so the part that they like, the initial stage of the IEP, is going to last months, and the part that they don't is going to last a relatively much shorter period of time. Under their logic, they would get to write out that IEP until the very end, not do anything about filing. Well, not really, because the whole point of the reason it was short was because it was dealing with an exigency and it was, as Ms. Landwehr said, it was interim. It was temporary. It was meant that way. It was to fill a gap. It was not what was proposed originally, and it was not the thrust of this thing at all. It was just a gap-filling measure. The gap-filling measure, there are two parts here, and I want to go back to what I was saying earlier. If all that was being addressed by the IEP team, which it's not the IEP team's obligation or job to address getting the student back in school after the student's been suspended or expelled. That's not an IEP team function. The part that was being done on an interim basis was moving the student to a different school. He could have been placed in a different school with the same program that he was receiving under his 2014 IEP. That would have been easy. If it was only to address the exigent circumstances of his suspension, that would have been done. But the IEP team did more than that. It crafted a... So you think that the school would have wanted him to be placed in the middle of a class that had been going on all year for three weeks. You think the teacher would have had any reason to deal with him, would have wanted him there? Anybody would have wanted him there? Of course not. At some point you have to look at the realities of the situation. It was in the district's interest to have this one-on-one situation because otherwise they would have had to have a class accommodate him for three weeks that had been going on for nine months. But the IEP team determined, as the ALJ found and as Judge Robart indicated, that the IEP team felt like it was important to have a transitional step for the student and they crafted the short-term program as a transition step. That's not what Ms. Landwehr thought was going on. That's what the ALJ determined and Judge Robart accepted. I would like to take... I've got about a minute left and I'm happy to address any other section of the case that you would like me to. But I do want to return back to the starting point and the reason I think it is important to talk about the standard of review in this case is because when Judge Robart applied the language from all of the Ninth Circuit cases that have been cited, Johnson, KD, ND, that says you look to the last implemented IEP to determine placement. You do not look to what portions of that IEP have been implemented. That was not a misapplication of the Ninth Circuit standard. It was not a misapplication of the law. It was simply an application of that standard to these facts. Counsel, I know you've run out of time, but I do have one more question. This is one of those sort of experience outside the record questions. In your experience, how common is it for an IEP to have more than one section or more than one placement over a period of time? Is that very unusual, very usual, or something in between? I would say it's something in between. It's not very usual for sure. And the scenario that I would suggest to the court is it's common that school districts provide programs for students who have, for whatever reason related to their disability, difficulty with transitions. And students on the autism spectrum, students with anxiety, ADHD, students oftentimes exhibit that as a manifestation of their disability. And so when you have an IEP that spans school years, and perhaps that IEP is also going to span different schools, a student moving, for example, from an elementary level to a middle school level where there are going to be many more transitions involved in the second part of that IEP than the student has to experience in the elementary setting, that it's not uncommon that you will find a different level of services and a different level of support in the second half of that IEP because that's what the student is going to need at that point in his education. So is your position that if the parents want to challenge, they are comfortable with the first part, but they're not comfortable with the second, and they want to challenge the second, they have to also challenge the first or else they're not going to have a stay put? No, that's not my position. So what would the stay put be if they only challenged the second? What they do have to do is challenge the IEP. Okay, they did challenge the IEP. They did challenge the IEP, but they have to do so in a timely way or else you find yourself in the situation that I was talking about earlier where if the time periods were flipped and you're just writing out the part that you enjoy or the part that you like and waiting to get to the part that you don't, that's not what's contemplated either by the statute and certainly by the guidance out of OSEP. So I agree with you to the degree that to the degree they're challenging, they're suggesting it's a three-week placement is the stay put. That can't be right. The stay put has to be the on-the-ground actual placement that he was engaged in before the whole IEP proceeding, the new IEP proceeding began. So if the person did what you're suggesting, they would have to go back to the pre-IEP program. They couldn't start dividing the thing up in pieces, but that's a different issue. No, I think I follow that. I believe that I agree with that. If the parents challenge at the outset of the IEP, it's likely, and this is the question I was addressing earlier, it's going to be fact-specific and fact-dependent, but it's likely that the prior IEP may become stay put. But because of the Ninth Circuit standard that you look to, and what the standard in the Ninth Circuit tells us is just where you look. You look to the placement described in the last implemented IEP. If the parents write it out as these parents did, at some point that becomes the last implemented IEP. And you look to that IEP to determine what the placement is. And at the time that this case was filed, in the middle of September, what that IEP called for was the second stage of that IEP's placement. And that's what Judge Robart held, that's what the ALJ held. And so I think in that instance, you implement that placement. Okay. Your time is up. Thank you very much. Thank you, Your Honor. There's three points I'd like to address in the reply. One, the difference between filing in June versus September, to Judge Murguia's point. Two, the conflation, again, of IEP and placement, and definitions that I think are helpful in the Ninth Circuit. And three, the question of atypicality that Judge Graper raised. So with regard to whether it would have made a difference to file immediately, it was in June when they finally received the prior written notice. And likely it would have been late June, getting the lawyer together, filing. That individual program would already have been implemented and agreed to. And it would not make a difference having filed. Yeah, but for about two weeks? Well, perhaps three. They received it at least a week. We think maybe ten days in the three-week program. So getting it together, filing, and then seeking stay put happens after you write your complaint and file. And so with that timeline, it likely would have happened at the end of June, possibly when the program was over. But the point was it was already the program in effect. The program placement that was happening was the individual program. So filing at the end of June or filing in the beginning of September, it was actually September 9th, not mid-September, prior to the beginning of the school year, when the due process was finally filed, wouldn't have made a difference because during those summer months there was no program in effect. So the last operational, excuse me, go ahead. According to your opposing counsel here, it seems likely, based on a reasonable time assessment, that the last implemented IEP would have been the 2014. Well, when we think about what implemented means, and I think this is a really important point, under Johnson v. Johnson, which is our Ninth Circuit case law in point, we talk about the specific educational placement, the unique combination of services. And with regard to Thomas, which is the Sixth Circuit case that a lot of our Ninth Circuit cases look to, we're talking about the operational placement in effect. And so whether we want to talk about that as an interim program that can't possibly then be a stay put, that's a reason why the individual program would not be stay put. But filing it after it's already been agreed to and implemented doesn't change the characterization of it as the current operational placement and doesn't change our analysis of whether or not it's interim. I'm not sure I understand your response because you would not have agreed to that. You would have said to them after you got notice and you talked to your attorney, or they talked to their attorney, you, you would have said, you know what, we're objecting to this IEP with two phases. So we want a stay put order. I assume that would have meant the 2014 would have been in place and you could have asserted, but you chose not to do that. We aren't objecting to the fact that there were two phases contained. I understand. We're objecting to the implementation of the Second Home Program. I understand. Which never happened and didn't happen in either district. And so I don't believe that June or September makes a difference. You want to say, though, you want to argue that there would be, any time there's a phase, there's like multiple IEPs when they're separated into phases, even though it's enveloped in one program. And I would argue that these are not phases enveloped in one program. These are two distinct placements contained in a bunch of papers stapled together, which is an IEP. But part of the one proposed agreement that the IEP team or the… What is the statutory provision that we're interpreting? The language thing. The statutory provision is… Current educational placement, is that what it says? Then current educational placement. It doesn't say anything about an IEP. And, Thomas, the Sixth Circuit specifically says, had Congress intended for it to be the IEP, they would have said IEP. Basically, on the grounds, the whole point of it is that the child should not be moved from where he is on the ground, in fact, is, if there is a pending proceeding regarding what's supposed to happen to him next. Honig-Videau says the purpose is twofold. One, to maintain the status quo for the student, but also to prevent unilateral action by the district, attempting to exclude the student… And the focus was exactly on this kind of unilateral action, i.e. taking the child out of a mainstream situation into an isolated situation. Completely isolated, going from, I believe, 92% of his time in the general education setting with his typically developing peers to, I think it was 3% in the proposed program. Hugely different and exclusionary. And we believe harmful, according to the recommendation of his treating psychologist and the independent evaluator over the summer, who both advised against that program, given that he was a highly gifted student with sensory issues, he should not be warehoused in a program for emotionally behavioral disturbed students, many of whom are lower cognitive. And my time is up. Thank you very much. Thank you for your argument in this challenging case. Thank you. It was helpful. We will submit the case of N.E. v. Seattle School District and are in recess.
judges: Graber, Berzon, Murguia